Sunview v. Aztech                    CV-95-418-B    09/03/96

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Sunview Condominium Association,
Evergreen Management, Inc., et al.

    v.                                    Civil No. 95-418-B

Aztech International, Ltd. and
Flexel International, Ltd.


**O R D E R**

The Sunview Condominium Association and its management company, Evergreen Management, Inc., are the named plaintiffs in this class action against Flexel International, Ltd. and Aztech International, Ltd.  The complaint alleges that the class members suffered damages caused by defective radiant heating panels that were manufactured by Thermaflex International Ltd., a company later purchased by Flexel.  Thus, plaintiffs allege that Flexel is liable as Thermaflex's successor.  The complaint alleges that Aztec is liable because it distributed the defective panels to customers throughout the United States.  The claims against Aztech were stayed after it sought bankruptcy protection.  Flexel now moves to dismiss the claims against it, asserting a lack of

personal jurisdiction.

## I. **BACKGROUND**[1]

The named plaintiffs' claims arise from a fire at the Sunview condominium complex in Derry, New Hampshire, on December 17, 1993. Plaintiffs allege that the New Hampshire Fire Marshall's office investigated the fire and determined that it had been caused by defective radiant ceiling heating panels.

The heating panels installed in Sunview's condominiums were manufactured by Thermaflex, an English corporation with business offices and manufacturing facilities located only in Scotland. Aztec, Thermaflex's sole distributor in the United States, sold the heating panels under the name "Aztec-Flexel." On July 31, 1993, Thermaflex's assets were purchased by Flexel, a Scottish corporation formed in June 1993.[2]

_____

[1] The background facts are drawn from the parties' evidentiary submissions and are considered in the light most favorable to the plaintiffs. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).

[2] The "Business Transfer Agreement" by which Flexel purchased Thermaflex's assets states that "Thermaflex is Flexel's wholly-owned subsidiary." However, the parties do not treat this assertion as significant to the determination of personal jurisdiction.

Aztech sold the panels that were installed at Sunview to MacDonald-Wadman, Co., Inc., of Needham, Massachusetts, who, in turn, sold the panels to Siemens Supply in Manchester, New Hampshire. Siemens sold the panels to Peter Peck, the electrician who installed them at Sunview. An employee from MacDonald-Wadman, Mike Miller, was present during the installation of the panels at Sunview. Although Miller's business card stated that he was a "Manufacturers' Representative," it does not specify what companies he represented. No other evidence was produced to support a finding that Miller was then acting as a representative for either Thermaflex or Aztech.

The plaintiffs allege that the New Hampshire Fire Marshal investigated the Sunview fire and determined that it was caused by a defect in the Aztec-Flexel radiant ceiling heating panels. Peck, who had installed the panels, contacted the general manager of Flexel, David Marrs, about the problem with the panels at Sunview.[3] Marrs responded on May 9, 1994, with a description and

---

[3] Peck also contacted the supplier, MacDonald-Wadman, on behalf of another customer for whom Peck had installed Aztec-Flexel panels. In that case, MacDonald-Wadman replaced the panels with new Flexel panels without charge. While installing the new panels, Peck found installation instructions from a

3

promotional materials about a new heating panel manufactured by Flexel. In a July 1, 1994, letter, Marrs denied liability for the Sunview fire, but offered to supply replacement heating panels at no charge. On July 11, Marrs asked Peck to provide an itemized breakdown of the amount claimed for repairs. Marrs also communicated with the New Hampshire Fire Marshal about the installation of the panels at Sunview.

## II. STANDARD OF REVIEW

When jurisdiction over a defendant is contested, the plaintiff bears the burden of demonstrating that personal jurisdiction exists in this court. Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). To carry the burden when, as in this case, there has been no evidentiary hearing, the plaintiff must make a prima facie showing of personal jurisdiction by offering "evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992). In meeting this standard, the plaintiff "ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts."

company called "AZTEC--a Division of Marley Electric Heating."

4

Foster-Miller, Inc., 46 F.3d at 145; accord United Elec. Radio and Mach. Workers of America v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993).  However, the court "must accept the plaintiff's (properly documented) evidentiary proffers as true" and make its ruling as a matter of law.  Foster-Miller, Inc., 46 F.3d at 145.  An evidentiary hearing is required only if the court determines that it would be unfair to the defendant to resolve the issue without requiring more of the plaintiff than a prima facie showing of jurisdiction.  Id. at 146.

### III.  ANALYSIS

A federal court may assert personal jurisdiction over a nonresident defendant in a diversity of citizenship case only if the plaintiff establishes both that:  (1) the forum state's long-arm statute confers jurisdiction over the defendant, and (2) the defendant has sufficient "minimum contacts" with the forum state to ensure that the court's jurisdiction comports with the requirements of constitutional due process.  Sawtelle, 70 F.3d at 1387; Kowalski v. Doherty, Wallace, Pillsbury & Murphy, Attorneys at Law, 787 F.2d 7, 8 (1st Cir. 1986).  I begin with the applicable New Hampshire jurisdiction statute.

## A.  New Hampshire's Long Arm Statute

Because Flexel is a foreign corporation, incorporated for profit under the laws of Scotland, New Hampshire Revised Statutes Annotated § 293-A:15.10 (Supp. 1995) is the controlling long-arm statute.  McClary v. Erie Engine & Mfg. Co., 856 F. Supp. 52, 55 (D.N.H. 1994).  The New Hampshire corporate long-arm statute has been interpreted "to authorize jurisdiction over foreign corporations to the full extent allowed by federal law."  Id. Therefore, I need only determine whether a finding of personal jurisdiction in this case would meet the constitutional standard.

## B. Constitutional Analysis:  Due Process

The Due Process Clause of the Fourteenth Amendment limits a state's power to assert personal jurisdiction over nonresident defendants.  Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408, 413-14 (1984) (citing Pennoyer v. Neff, 95 U.S. 714 (1877)).  For the court to properly assert personal jurisdiction over an absent nonresident defendant, the defendant must have had "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Helicopteros, 466 U.S. at 414 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)); accord Burnham v. Superior Court of Cal., County of

6

<u>Mann</u>, 495 U.S. 604, 618 (1990). To satisfy this requirement, the defendant's conduct should bear such a "substantial connection with the forum [s]tate" that the defendant "should reasonably anticipate being haled into court there." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 473-75 (1985) (internal quotations omitted).

The plaintiffs assert that Thermaflex's and Flexel's actions[4] provide the court with specific personal jurisdiction.[5] Accordingly, the plaintiffs must make a <u>prima facie</u> case that Flexel's contacts with New Hampshire meet the constitutional standard. The First Circuit uses a three-part test to determine whether the defendant has had sufficient minimum contacts with the forum state to support specific personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-

---

[4] For purposes of the jurisdictional analysis, I will assume, without deciding, that Flexel is the corporate successor of Thermaflex so that Thermaflex's actions may be attributed to Flexel.

[5] Because the plaintiffs do not raise or discuss general jurisdiction, I will not apply the doctrine to the facts in this case. Thus, I address only the more narrow concept of specific jurisdiction. <u>See</u> <u>Helicopteros</u>, 466 U.S. at 413-14 (discussing concepts of general and specific jurisdiction); <u>Foster-Miller, Inc.</u>, 46 F.3d at 144 (same).

7

state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Workers, 960 F.2d at 1089; accord Sawtelle, 70 F.3d at 1388. Because I conclude that plaintiffs cannot satisfy the purposeful availment component of this test, I need not address the test's other requirements.

1. Purposeful availment.

The keystones of purposeful availment are whether it was foreseeable that the defendant would be haled into court in the forum state and whether the defendant's activities in the forum were voluntary. Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994). Thus, unless the plaintiff can show conduct by the defendant demonstrating "an intent or purpose to serve the market in the forum state," evidence that the defendant launched its product into "the stream of commerce" is not sufficient to establish purposeful availment. Asahi Metal Indus. v. Superior Court of Cal., Solano County, 480 U.S. 102, 112 (1987) (O'Connor, J., plurality opinion); accord, Boit v. Gar-Tec Products, Inc., 967 F.2d at 671, 682-83 (1st Cir. 1992).

The plaintiffs allege that Thermaflex established a

8

distribution network to market and distribute the heating panels throughout the United States including New Hampshire. The undisputed facts, however, show that Aztech was the only distributor of Aztec-Flexel panels in the United States and was exclusively responsible for marketing and distributing the panels. Further, the plaintiffs have presented no evidence to counter the affidavit of Flexel's chairman, Thomas Gilmour Graham, who states that Thermaflex did not direct and was not informed of Aztech's distribution, marketing, or advertising of the panels. In addition, there is no evidence that Thermaflex designed the panels specifically for use in New Hampshire, or that either Thermaflex or Aztech advertised in New Hampshire.[6] Finally, there is no evidence that Thermaflex was aware of the sale of its panels to Sunview or other New Hampshire consumers. See Boit, 967 F.2d at 683.

The plaintiffs attempt, however, to link Thermaflex to MacDonald-Wadman, Co., Inc., the Massachusetts company that sold the Sunview panels to the New Hampshire supplier and whose

---

[6] The plaintiffs' submissions concerning use of the panels in California and Minnesota do not contradict Graham's affidavit or establish that either Thermaflex or Aztech advertised or directed activity to New Hampshire.

9

representative, Mike Miller, was present when the panels were installed at Sunview.  The plaintiffs claim that Miller was Thermaflex's representative because he had "Manufacturers' Representative" printed on his business card.  The generic title on the card does not supply the missing link, however, because the card includes no reference to Thermaflex, Aztech, or Aztec-Flexel panels or any other indication of what manufacturer Miller claimed to represent.  The card also does not establish that Miller was at Sunview as Thermaflex's representative rather than as an employee of MacDonald-Wadman Co.  Therefore, the card does not show that Thermaflex had established an agency relationship with either MacDonald-Wadman or Miller.

Based on the circumstances presented, the sales of the Aztec-Flexel panels in New Hampshire[7] appear to have been merely random or fortuitous events that are insufficient contact to establish Thermaflex's purposeful availment of New Hampshire as a

---

[7] Although Peter Peck, who installed the panels at Sunview, also installed Aztec-Flexel panels in a private residence in New Hampshire, the record contains no evidence suggesting that either Thermaflex or Aztec was aware that Aztec-Flexel panels were being used in New Hampshire.  Cf. D'Almeida, 71 F.3d at 51 (where distributor placed order for product with manufacturer and manufacturer sent product directly to customer in forum state presented a close call on question of minimum contacts).

place to do business.  As a result, the plaintiffs' effort to meet Flexel's jurisdictional challenge ends here.[8]

## IV.  CONCLUSION

For the foregoing reasons, Flexel's motion to dismiss for lack of personal jurisdiction (document no. 17) is granted.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

September 3, 1996

cc:  Daniel Behles, Esq.
     John Putnam, Esq.
     William Chapman, Esq.
     Mark DeGiacomo, Esq.

---

[8]  Because I conclude that this court lacks personal jurisdiction over Flexel, the other issues Flexel raises in its motion to dismiss are moot.

11