Kreis v. Boca Chica Resort          CV-97-058-SD 06/30/97

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Jennifer Kreis;
Kenneth Kreis

   v.                                    Civil No. 94-151-SD

Boca Chica Resort

# O R D E R

In this diversity action, plaintiffs Jennifer and Kenneth Kreis seek relief against defendant Boca Chica Resort of Santo Domingo, Dominican Republic (Boca Chica) under state law claims of negligence and loss of consortium for injuries Jennifer Kreis sustained while a guest at Boca Chica.  Currently before the court are defendant's motions to dismiss for lack of personal jurisdiction and insufficiency of service of process, and plaintiff's motion requesting that the court accept the facsimile affidavit of Harry Hughes as valid without the need for notarization and in the alternative requesting an extension of time for the filing of a notarized original affidavit.


## Background

Plaintiffs purchased a package vacation at Boca Chica resort based on information regarding Caribbean tour packages that they had obtained from Penny Pitou Travel, a travel agency located in New Hampshire.  During the evening of their arrival on April 21,

1991, plaintiffs walked about the property of the resort. During this walk, Mrs. Kreis was injured when she accidentally stepped into an open pipe located in the sidewalk.

Boca Chica is incorporated in the Dominican Republic, which is its only place of business. Boca Chica does not have any officers, directors, or employees who are citizens of New Hampshire. The resort has never maintained an office or a bank account in this state.

Boca Chica contracted with The Hotel Company, a New York marketing firm, for marketing and sales services. The Hotel Company, located in the office space of International Travel & Resorts, Inc. (ITR), is the sole representative of Boca Chica in the entire North American region. The Hotel Company sells blocks of Boca Chica's rooms to several tour package operators, including Globetrotters, and advertises for Boca Chica, while also acting as a contact for information and bookings.

One of the tour package operators that buys blocks of Boca Chica's rooms from The Hotel Company is Globetrotters, a Massachusetts corporation. Globetrotters assembles tour packages which include airfare on any of several airlines and rooms at any of several hotels and resorts. Globetrotters then sells these package trips to travel agencies, such as Penny Pitou Travel, who in turn sell the tours directly to consumers. Globetrotters

2

furnished Penny Pitou Travel with a brochure describing its package tours in the Caribbean, which included a listing for Boca Chica. Penny Pitou Travel provided this brochure to Mrs. Kreis's father, which led to the plaintiffs' booking a trip to Boca Chica. Plaintiffs dealt directly with and paid Penny Pitou Travel, which in turn made arrangements with Globetrotters. Globetrotters scheduled the flight and reserved the room at the resort through The Hotel Company.

<u>Discussion</u>

<u>1. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction</u>

    <u>a. Standard of Review</u>

When the defendant challenges personal jurisdiction, the plaintiff bears the burden of demonstrating that it is proper for the court to assert jurisdiction. <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1387 (1st Cir. 1985). A prima facie standard applies, under which the court determines whether the plaintiffs have produced evidence that, "if credited, is enough to support findings of all facts essential to personal jurisdiction." <u>Boit v. Gar-Tec Products, Inc.</u>, 967 F.2d 671, 675 (1st Cir. 1992). The court accepts the plaintiff's properly documented proffers of evidence as true. <u>See</u> <u>id.</u>

b. The New Hampshire Long-Arm Statute

The applicable New Hampshire long-arm statute governing the exercise of jurisdiction over foreign corporations permits jurisdiction "to the full extent allowed by federal law." New Hampshire Revised Statutes Annotated (RSA) 293-A:15.10(5) (Supp. 1996). Since the long-arm statute and the constitutional requirements of due process are coextensive, the court turns its attention to whether the assertion of personal jurisdiction over Boca Chica comports with constitutional due process standards. Sawtelle, supra, 70 F.3d at 1388 (citing McClary v. Erie Engine & Mfg. Co., 856 F. Supp. 52, 55 (D.N.H. 1994)).

c. Due Process

The exercise of personal jurisdiction comports with the Fourteenth Amendment's Due Process Clause if certain "minimum contacts" exist between the defendant and the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); accord Sawtelle, supra, 70 F.3d at 1388. Plaintiffs do not contend that general personal jurisdiction is available over Boca Chica; rather, they argue only specific personal jurisdiction. A determination of whether a defendant has sufficient minimum contacts to permit the exercise of specific personal jurisdiction is made in this circuit via the following tripartite analysis:

4

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1089 (1st Cir. 1992); accord Sawtelle supra, 70 F.3d at 1388-89.

As a threshold matter, it is necessary to identify the contacts between Boca Chica and New Hampshire. First, The Hotel Company, a New York company, arranged to have Boca Chica listed in a travel brochure published by Globetrotters, a Massachusetts company, and distributed to Penny Pitou Travel in New Hampshire. Second, ITR and The Hotel Company, both New York companies, advertised on behalf of Boca Chica in New Hampshire. The issue at hand is whether either of these two contacts constitutes sufficient "minimum contacts" such as will support the exercise of personal jurisdiction over Boca Chica.

This court concludes that neither contact satisfies the minimum contacts test because each completely fails either the relatedness or the purposeful availment prong of the tripartite analysis. While a weak showing of either relatedness or purposeful availment is typically just a factor in the

5

jurisdictional analysis, "a <u>complete failure</u> to demonstrate relatedness or purposeful availment . . . is dispositive of the jurisdictional issue." <u>Mitrano v. Jerry's Ford Sales</u>, No. 95-266-JD, slip op. at 10 n.4 (D.N.H. Oct. 6, 1995) (citing <u>Ticketmaster-New York, Inc. v. Alioto</u>, 26 F.3d 201, 207 (1st Cir. 1994)) (emphasis added).  As discussed below, the first relevant contact, Boca Chica's listing in the Globetrotters brochure distributed in New Hampshire, completely fails the purposeful availment prong, and the second relevant contact, advertising for Boca Chica within the state, is wholly unrelated to the plaintiffs' cause of action.

### (i) Boca Chica's Listing in a Globetrotters Brochure

Boca Chica's listing in a Globetrotters travel brochure that was distributed in New Hampshire is not an act through which the resort "purposefully avail[ed] itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958).  The focus of a purposeful availment analysis is "whether [the] defendant has 'engaged in any purposeful activity related to the forum that would make the exercise of personal jurisdiction fair, just, or reasonable.'" <u>Sawtelle</u>, <u>supra</u>, 70 F.3d at 1391 (quoting <u>Rush v. Savchuck</u>, 444

6

U.S. 320, 329 (1980)).  The two cornerstones of purposeful availment are the voluntariness with which the defendant's contacts were established and the foreseeability that these contacts would subject the defendant to suit in New Hampshire. See Ticketmaster, supra, 26 F.3d at 207; Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 716 (1st Cir. 1996).

The listing of Boca Chica in the Globetrotters travel brochure does not constitute a voluntarily established contact between Boca Chica and New Hampshire.  Voluntary contacts are those that "amount[] to a purposeful decision by the nonresident to 'participate' in the local economy . . . ." Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 934 (1st Cir. 1985). Voluntary contacts may be contrasted with "'the unilateral activity of another party or 'third person.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1984) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417 (1984)). The listing of Boca Chica in the Globetrotters travel brochure distributed in New Hampshire is more attributable to the unilateral acts of The Hotel Company and of Globetrotters rather than to a purposeful decision by Boca Chica to participate in the local economy.  Boca Chica's listing made its way into New Hampshire through a long chain of events beginning with a contract between Boca Chica and The Hotel Company for marketing

7

services throughout North America.  Pursuant to this agreement, The Hotel Company sold rooms to Globetrotters in Massachusetts so Globetrotters could offer Boca Chica as one of several hotel accommodations as part of a travel package.  Globetrotters assembled the vacation packages and distributed informational brochures to various travel agencies, including Penny Pitou Travel in New Hampshire.  The only purposeful decision attributable to Boca Chica is its entering into the marketing contract with The Hotel Company.  Beyond this, The Hotel Company was exclusively responsible for promoting Boca Chica, and the resort itself retained no control over, nor expressed any interest in, those states in which its rooms were marketed.  The listing of Boca Chica in a travel brochure distributed in New Hampshire was the result of the acts of The Hotel Company and Globetrotters rather than a purposeful decision of Boca Chica to participate in the New Hampshire economy.  While it may be said that the agreement between Boca Chica and The Hotel Company set in motion a chain of events that ultimately resulted in Boca Chica's listing in the brochure in New Hampshire, finding this to be "a sufficiently direct 'targeting' of [New Hampshire] would be to embrace, in effect, the 'stream of commerce' theory of personal jurisdiction rejected by the First Circuit."  Bennett v. Jack Dennis Whitewater Trips, 925 F. Supp. 889, 897 (D. Mass.

8

1996) (citing <u>Sawtelle</u>, <u>supra</u>, 70 F.3d at 1393; <u>Boit</u>, <u>supra</u>, 967 F.2d at 681-82).

Plaintiffs rely on the recently decided <u>Nowak</u> case, in which the First Circuit upheld the exercise of personal jurisdiction over a foreign hotel that, like Boca Chica, solicited business in the United States. <u>Nowak</u>, <u>supra</u>, 94 F.3d at 711. However, <u>Nowak</u> is readily distinguishable. In <u>Nowak</u>, the controlling factor was the hotel's direct solicitation of business from a Massachusetts corporation. <u>See id.</u> at 717. Through its efforts, the hotel established an ongoing correspondence and relationship with this corporation. <u>See id.</u> Here, Boca Chica did not directly solicit, correspond with, or in any way specifically campaign New Hampshire residents.

### (2) Boca Chica's More General Advertising

Long after Mrs. Kreis suffered injury, Mr. Kreis obtained an advertising brochure for Boca Chica from a New Hampshire travel agent. The brochure was distributed by The Hotel Company or ITR. Mr. Kreis also stated that, within one year of his wife's accident, he observed posters also devoted solely to advertising the resort displayed in the window of a New Hampshire travel agency. In addition, Mr. Kreis conducted an Internet search regarding Boca Chica that produced information on the resort and

listed ITR as the contact.

Since the plaintiffs never observed the above advertising prior to their decision to book a stay at Boca Chica, this contact is completely unrelated to the plaintiffs' cause of action. The relatedness requirement is met if the action directly arises out of the specific contacts between the defendant and the forum state. Sawtelle, supra, 70 F.3d at 1389 (citing Fournier v. Best Western Treasure Island Resort, 962 F.2d 126, 127 (1st Cir. 1992)). Relatedness "focuses on the nexus between the defendant's contacts with the forum and the plaintiff's cause of action." Ticketmaster, supra, 26 F.3d at 206. Because the Kreises never observed any of this advertising until after their trip, the advertising had no causal connection with their decision to vacation at Boca Chica and, subsequently, Mrs. Kreis's injury.

### Conclusion

In sum, the listing of Boca Chica in a New Hampshire travel brochure fails the purposeful availment test. The more general advertising in New Hampshire fails the relatedness test. Therefore, neither constitutes minimum contacts, and jurisdiction over Boca Chica is constitutionally improper. Having reached this conclusion, it is unnecessary to address the motion to

10

dismiss for insufficient service of process.

Lastly, plaintiff's motion requesting that the court accept the affidavit of Harry Hughes is granted, but this court nonetheless finds that the information contained in Hughes's affidavit does not alter the conclusion that jurisdiction over Boca Chica is improper.

Basically, Hughes swears that a substantial percentage of Boca Chica's customers come from northern New England. This evidence is unhelpful to the jurisdiction analysis for two reasons. First, it does not indicate what percentage of northern New England customers are from New Hampshire, the forum in which jurisdiction is sought. Second, as discussed above, the marketing of Boca Chica in New Hampshire is more attributable to The Hotel Company and Globetrotters rather than a purposeful decision by Boca Chica. The fact that The Hotel Company's marketing on behalf of Boca Chica was successful and attracted customers from New Hampshire does not establish that Boca Chica purposefully availed itself of the privilege of doing business in New Hampshire.

For the foregoing reasons, Boca Chica's motion to dismiss for lack of personal jurisdiction is granted.

**SO ORDERED.**

_____
Shane Devine, Senior Judge
United States District Court

June 30, 1997

cc:   Andrew J. Harmon, Esq.
      Claudia C. Damon, Esq.

12