NEA v. Eagle Electronics                CV-95-528-M   09/30/96

UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


NEA, Inc.,
     Plaintiff,

v.                                          Civil No. 95-528-M

Eagle Electronics, Inc.,
     Defendant.

                            O R D E R


     In this diversity action, the plaintiff, Northern

Electronics Association, Inc. ("NEA"), seeks $91,500 allegedly

owed to it by defendant, Eagle Electronics, Inc. ("Eagle").  The

amount claimed represents the combined value of products,

equipment, and an outstanding invoice that were part of a

business relationship between NEA an Eagle.  Eagle moves to

dismiss NEA's complaint pursuant to Fed. R. Civ. P. 12(b)(2)

asserting that this court lacks personal jurisdiction over it.

In the alternative, Eagle moves for a change of venue to

California.  The motions are resolved as follows.

## BACKGROUND[1]

NEA is a New Hampshire corporation that sells and services reconditioned electronic manufacturing equipment and parts, including an "Amistar machine," which installs parts into printed circuit boards. Eagle is a California corporation that serves as a sales representative for manufacturers of electronic manufacturing equipment. For several years, NEA did business with Eagle through Carl Isemann, one of Eagle's two employees.[2] NEA was particularly interested in Isemann because he could service the Amistar machine. Eagle also served as NEA's non-exclusive west coast sales representative. In 1993, NEA and Eagle agreed that Eagle would serve as NEA's exclusive west coast sales representative and NEA also asked Eagle to assist in establishing an NEA office in California. NEA leased office space from Eagle in Valley Center, California, which was referred to as "NEA West" on orders and in business correspondence. NEA

---

[1] Consonant with the standard of review, the court accepts the plaintiff's properly supported factual statements as true. See Foster-Miller Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).

[2] The other Eagle employee is Pamela Isemann, who is referred to as the president of Eagle. Carl and Pamela Isemann are husband and wife.

shipped several Amistar machines to California to be held in inventory at the west coast office.

In July 1993, when NEA was considering a large purchase of used electronic parts and machines from a Massachusetts business, Isemann came to New Hampshire to provide assistance. Isemann met with NEA people in New Hampshire to discuss the purchase and then travelled to Massachusetts to inspect the parts and machines. Isemann returned to NEA in New Hampshire, and the decision to buy the equipment was based, in part, on Isemann's opinion. Isemann used an NEA employee's car to pick up certain small items and machines for NEA. The majority of the equipment was trucked from Massachusetts to NEA in New Hampshire, and Isemann assisted NEA employees in the unloading process. Approximately ninety percent of that purchase was then shipped to Isemann at Eagle in California.

NEA hired Eagle to do all of its service work on Amistar machines, and Isemann travelled to where the machines were located to perform service. Isemann also came to NEA in New Hampshire to help train an NEA customer on the Amistar machine. When Isemann travelled to New England for electronics shows, he would visit NEA headquarters in New Hampshire to discuss

business.  All of Eagle's quotes for orders were processed through the computer system at NEA in New Hampshire by modem.

At some point, the relationship between Eagle (Isemann) and NEA soured, and a dispute developed over property that NEA claimed Eagle refused to pay for or return to NEA.  NEA brought suit in Rockingham County (New Hampshire) Superior Court on October 3, 1995, alleging that Eagle owed NEA an aggregate sum of $91,500.00 for product NEA sent to Eagle for resale, the balance owed on an outstanding invoice, and the value of two computers. Eagle removed the case to this court on October 27, 1995, and now moves to dismiss for lack of personal jurisdiction or for a change of venue pursuant to 28 U.S.C.A. §1404(a).

## A.    Personal Jurisdiction

When a defendant moves to dismiss for lack of personal jurisdiction, Federal Rule of Civil Procedure 12(b)(2), the burden is on the plaintiff to prove that the forum state has jurisdiction.  Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).  To carry the burden when there has been no evidentiary hearing, the plaintiff must make a prima facie showing of personal jurisdiction by submitting "evidence that, if credited, is enough to support findings of all facts essential to personal

4

jurisdiction." <u>Boit v. Gar-Tec Prods., Inc.</u>, 967 F.2d 671, 675-76 (1st Cir. 1992); <u>accord</u> <u>Foster-Miller, Inc. v. Babcock & Wilcox Canada</u>, 46 F.3d 138, 145-46 (1st Cir. 1995). The plaintiff must go beyond the pleadings and "adduce evidence of specific facts." <u>Foster-Miller</u>, 46 F.3d at 145. The court accepts properly supported facts as true and construes disputed facts most favorably to the plaintiff. <u>Ticketmaster-New York, Inc. v. Alioto</u>, 26 F.3d 201, 203 (1st Cir. 1994). An evidentiary hearing is necessary only if the court determines that it would be unfair to the defendant to assert personal jurisdiction based on only the plaintiff's prima facie showing. <u>Foster-Miller</u>, 46 F.3d at 145-46.

A federal court may assert personal jurisdiction over a nonresident defendant in a diversity of citizenship case only if the plaintiff establishes both that: (1) the forum state's long-arm statute confers jurisdiction over the defendant, and (2) the defendant has sufficient "minimum contacts" with the forum state to ensure that the court's jurisdiction comports with the requirements of constitutional due process. <u>Sawtelle</u>, 70 F.3d at 1387; <u>Kowalski v. Doherty, Wallace, Pillsbury & Murphy, Attorneys at Law</u>, 787 F.2d 7, 8 (1st Cir. 1986).

## 1. New Hampshire's Long Arm Statute

As Eagle is a California corporation, the analysis begins with New Hampshire's long-arm statute that applies to foreign corporations. See N.H Rev. Stat. Ann. § 293-A:15.10 (Supp. 1995); see also McClary v. Erie Engine & Mfg. Co., 856 F. Supp. 52, 55 (D.N.H. 1994). The New Hampshire corporate long-arm statute has been interpreted "to authorize jurisdiction over foreign corporations to the full extent allowed by federal law." Id. Therefore, a finding of personal jurisdiction in this case depends upon the constitutional standard.

## 2. The Constitutional Standard: Due Process

The Due Process Clause of the Fourteenth Amendment limits a state's power to assert personal jurisdiction over nonresident defendants. Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408, 413-14 (1984) (citing Pennoyer v. Neff, 95 U.S. 714 (1877)). For the court to properly assert personal jurisdiction over an absent nonresident defendant, the defendant must have had "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Helicopteros, 466 U.S. at 414 (quoting International Shoe Co. v. Washington, 326 U.S. 310,

6

316 (1945)); accord Burnham v. Superior Court of Cal., County of Mann, 495 U.S. 604, 618 (1990).  To satisfy this requirement, the defendant's conduct should bear such a "substantial connection with the forum [s]tate" that the defendant "should reasonably anticipate being haled into court there."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) (internal quotations omitted).

The due process standard may be satisfied by the defendant's general or specific contacts with the forum state.  Pritzker v. Yari, 42 F.3d 53, 59 (1st Cir. 1994).  "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state."  Id. at 60 (quotation omitted).  Here, NEA has shown that Eagle, through Isemann, had some business contact with NEA in New Hampshire, but has not shown that Eagle had unrelated activities in New Hampshire that were "continuous and systematic" as is necessary to support general personal jurisdiction.

Specific personal jurisdiction depends upon the defendant's contacts with the forum state that are directly related to the litigation.  United Elec. Workers v. 163 Pleasant Street Corp.,

960 F.2d 1080, 1088-89 (1st Cir. 1992). To determine whether sufficient contacts exist to exercise specific personal jurisdiction, the court uses a three-part test:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the gestalt factors, be reasonable.

Sawtelle, 70 F.3d at 1389 (citations and quotations omitted). Each piece of the test depends on the facts presented in the individual case "so that the task of "[d]ivining personal jurisdiction is more an art than a science.'"Id. at 1388 (quoting Ticketmaster, 26 F.3d at 206).


### a. Relatedness

To satisfy the first prong of the three-part test for personal jurisdiction, plaintiff's claim must directly arise out of or relate to the defendant's activities in the forum state. Sawtelle, 70 F.3d at 1389. NEA's present action against Eagle is to recover the value of property allegedly obtained by Eagle during their business relationship when Eagle served as NEA's exclusive sales representative on the west coast and Isemann

8

acted as NEA's service representative for Amistar machines. Eagle acknowledges that NEA's suit arises out of the parties' business agreement.

NEA represents that Eagle had contacts with New Hampshire, through its employee Isemann, that are directly related to Eagle's business with NEA. Isemann came to New Hampshire to train an NEA customer in using the Amistar machine; to assist NEA in its decision to make a large purchase of used parts and machines and to transport the purchased equipment back to NEA in New Hampshire where it was subsequently shipped to Eagle in California for sale; and to discuss other business. In addition, Eagle's quotes for selling NEA products were processed through NEA computers in New Hampshire. Although NEA has not traced the exact property that is in dispute in the lawsuit to Isemann's activities with NEA in New Hampshire, the connection is sufficiently close to meet the prima facie standard of relatedness.

### b. __Purposeful Availment__

NEA also satisfies the purposeful availment requirement of specific jurisdiction. The purposeful availment prong consists of two elements: foreseeability and voluntariness.

9

Ticketmaster, 26 F.3d at 207.  First, to be foreseeable, the "defendant's 'conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there.'"  Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  Second, to be voluntary, "jurisdiction may not rest on the 'unilateral activity of another party or a third person" but instead  Id. at 207-08 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

In this case, Eagle knew that it was dealing with a New Hampshire corporation whose principal place of business was in New Hampshire.  Eagle's argument that it contracted with the California division of a New Hampshire company is not supported by the facts:  the agreement itself is addressed to NEA in New Hampshire, and NEA had no presence in California except through Eagle.  Through Isemann, Eagle participated in business decision-making with NEA in New Hampshire, assisted NEA in making a large purchase of equipment, and processed all of its product quotes for orders through New Hampshire.  Eagle's contacts with New Hampshire were intentional activities conducted to further its business arrangement with NEA.

In addition, a defendant may anticipate being subject to personal jurisdiction in a particular forum, even if it conducted

10

no business there, if the defendant intended its conduct to harm the defendant in the forum state. See Calder v. Jones, 465 U.S. 783, 789 (1984); Hugel v. McNeil, 886 F.2d 1, 4 (1st Cir. 1989), cert. denied, 494 U.S. 1079 (1990). Eagle was aware that if it kept NEA's property and failed to pay for it, as NEA has alleged, the injury would be felt by NEA in New Hampshire.

The record facts support a prima facie case that Eagle's activities in New Hampshire were related to the NEA's suit and that Eagle purposefully availed itself of the benefits of Isemann's activities with NEA in New Hampshire knowing that conduct harmful to NEA would injure it in New Hampshire.

### c. **The Gestalt Factors**

Once the plaintiff has demonstrated a prima facie case that satisfies both the relatedness and purposeful availment requirements, the court must consider the fairness of subjecting a nonresident to jurisdiction in the forum state. Ticketmaster, 26 F.3d at 210. The fairness of asserting personal jurisdiction is evaluated through the "gestalt" factors:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the

11

controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Ticketmaster, 26 F.3d at 209 (citing Burger King, 471 U.S. at 477). The reasonableness of asserting jurisdiction over the defendant in the forum state is determined on a sliding scale: the weaker the plaintiff's showing on the relatedness and purposeful availment prongs, the easier the job for the defendant to show that jurisdiction would be unreasonable, and conversely the stronger the plaintiff's case, the less likely jurisdiction is unreasonable. Ticketmaster, 26 F.3d at 210. NEA's prima facie showing on the first two prongs falls into middle ground providing no advantage or disadvantage to Eagle in its effort to show that jurisdiction here would be unreasonable.

First, Eagle's burden of litigating in New Hampshire must be more than inconvenient:

> . . . the concept of burden is inherently relative, and, insofar as staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly, we think this factor is only meaningful where a party can demonstrate some kind of special or unusual burden.

Pritzker, 42 F.3d at 62. Eagle argues that because it consists of only two employees who both would have to travel to New Hampshire, incurring expense and requiring the business to close, it would bear a special burden if forced to defend NEA's suit

12

here.  On the other hand, NEA has a recognizable interest in obtaining convenient and effective relief, and a plaintiff's choice of forum is accorded deference.  See Sawtelle, 70 F.3d at 1395.  While the forum state has an interest in obtaining jurisdiction over a defendant who has caused injury in the state, it has less interest if the actions occurred elsewhere.  Id.  In this case, NEA arguably felt the harm of Eagle's allegedly wrongful retention of its property here although Eagle's actions occurred in California.  As in most cases, the effective administration of justice consideration does not tip the balance in this case.  See id.  In addition, the pertinent policy considerations add nothing to the analysis.

Eagle makes a good argument that requiring a defense in New Hampshire would impose a considerable burden.  On balance, however, Eagle's circumstances do not outweigh the other factors which favor asserting personal jurisdiction.  Although it is a close decision, personal jurisdiction over Eagle in this case is appropriate and reasonable under the constitutional standard.

B.    **Change of Venue**

Eagle also moves for a discretionary change of venue to California pursuant to 28 U.S.C.A. § 1404(a), acknowledging that

13

venue in New Hampshire is not improper.  NEA has not addressed the question of a change of venue in any meaningful way, even after Eagle pointed out that deficiency in its response to NEA's objection to the motion to dismiss.  Therefore, the analysis is entirely dependent on Eagle's presentation, NEA's having ceded the field.

District courts enjoy considerable discretion in deciding whether to transfer a case pursuant to section 1404(a).  Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987); Ashmore v. Northeast Petroleum Div. of Cargill, Inc., 925 F. Supp. 36, 38 (D. Me. 1996).  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C.A. § 1404(a).  There can be no doubt that this action might have been brought in the Southern District of California, where Eagle's principal place of business is located and where NEA alleges its property was wrongfully retained by Eagle.  See 28 U.S.C.A § 1391(a).

In exercising its discretion to transfer venue the court must consider both public and private interests in the location of the litigation, including the convenience of the parties and witnesses, the practical concerns for trial such as the

14

availability of compulsory process to compel attendance of unwilling witnesses, and administrative problems posed by a choice of law or congestion of court dockets. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). A defendant seeking to transfer an action bears a substantial burden to overcome the plaintiff's choice of forum by showing that the factors in favor of transfer predominate. Ashmore, 925 F. Supp. at 38; see also 1A James W. Moore, et al., Moore's Federal Practice ¶ 0.345[5] (2d ed. 1993). Despite considering the appropriate mix of factors, "there will often be no single right answer" as to where venue should lie. Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737 (1st Cir.), cert. denied, 434 U.S. 860 (1977).

Eagle asserts that the burden it will bear to litigate in New Hampshire is considerably greater than the burden on NEA to litigate in California. Eagle points to its small size and economic status, two employees, and revenue of only $100,000 annually, and argues convincingly that defending itself in a trial in New Hampshire would have serious adverse effects on its ability to maintain its business in California. By contrast, Eagle claims that NEA is a large corporation with may employees and sales of more than $10,000,000 annually, so that it could bear the burden of litigating in southern California.

15

In addition, Eagle says that it will call witnesses on its behalf who are not parties or employees and who are in California, where they would not be subject to this court's compulsory process. The property which is the subject of NEA's suit was held in California. The plaintiff's choice of forum is accorded less weight when the operative facts of the dispute have less connection with the forum state. Elbalah v. Republic Ins. Co., 879 F. Supp. 3, 4 (D.R.I. 1995). Eagle has not addressed the administrative interests of either forum other than to assert that California law should provide the substantive law for the case. A mere choice of law does not, however, tip the balance.

NEA has made no showing, and has made no effort to show, that the convenience of the parties and witnesses or the interests of justice would be best served by trying this suit in New Hampshire, and the plaintiff's choice of forum cannot be used to prejudice the defendant if it is not necessary to the plaintiff's opportunity to pursue the action. LaValley v. First Nat. Bank of Boston, 625 F. Supp. 591, 594 (D.N.H. 1985). Here, the balance of the factors favors a change of venue to the Southern District of California, particularly in light of NEA's failure to meaningfully address the issue.

16

## **CONCLUSION**

For the foregoing reasons, the defendant's motion to dismiss (document no. 5) is denied, but the motion for a transfer of venue to the Southern District of California is granted.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

September 30, 1996

cc:  Lawrence M. Edelman, Esq.
     H. Scott Haskell, Esq.

17