The Mountain Corp. v. Noles          CV-01-207-B          01/09/02

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**The Mountain Corp.**

   **v.**

                             Civil No. 01-207-B
                             Opinion No. 2002 DNH 010

**Steven Noles**


## MEMORANDUM AND ORDER

The Mountain Corporation has sued its former lawyer, Steven Noles, for legal malpractice and breach of contract, claiming that it lost a breach of contract action brought against it in Alabama state court because Noles was negligent in representing its interests.[1] Noles moves to dismiss the complaint claiming that the court lacks personal jurisdiction. For the reasons that follow, I grant his motion.

---

[1] Mountain also asserts a separate claim based on the Alabama Civil Practice Code, which requires that legal service providers act with "such reasonable care, skill, and diligence as other similarly situated legal service providers in the same general line of practice in the same general locality ordinarily have and exercise in a like case." Ala. Civ. Prac. Code § 6-5-572(3)(a). To the extent that this claim provides a separate cause of action, distinct from Mountain's negligence claim, I analyze it as if it were a tort claim when evaluating Noles' personal jurisdiction challenge.

## I.   BACKGROUND[2]

Mountain is a New Hampshire corporation that manufactures and sells t-shirts to retailers around the world.  In 1998, SouthTrust Bank, National Association sued Mountain for breach of contract in the Circuit Court of Lauderdale County, Alabama (the "Alabama litigation").  SouthTrust sought to collect debts Mountain allegedly owed to Tennessee River, Inc., a bankrupt company for which SouthTrust held the debt collection rights. SouthTrust alleged that Mountain owed Tennessee River $239,522.32 for t-shirts, sweatshirts and other items that Mountain had ordered and received.  Mountain hired Noles, an attorney licensed to practice in Alabama and Tennessee, to represent it in this matter.

Noles is not a resident of New Hampshire.  Nor does he have any clients, present or former, in New Hampshire other than Mountain.  Noles did not seek business in New Hampshire. Instead, a former classmate referred Mountain to him.  During his representation of Mountain, Noles traveled to New Hampshire

_____

[2] The background facts are drawn from the parties' evidentiary submissions and are considered in the light most favorable to the plaintiffs.  See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).

-2-

twice, first in October 1998 to visit Mountain's corporate headquarters, where he discussed the litigation with Mountain officers and helped with document review, and then in December 1999, in order to attend the deposition of Mountain's President, Michael Krinsky. Otherwise, Noles communicated with Mountain by sending emails and letters, and by making telephone calls, to its New Hampshire office.

Mountain suffered a series of setbacks in the Alabama litigation as a result of Noles' alleged negligence. Noles filed a motion to dismiss on Mountain's behalf but failed to appear at the hearing on the motion. Although Mountain had provided Noles with all relevant discovery documents, he failed to produce timely and complete responses to SouthTrust's interrogatories and document requests. Noles also failed to object to SouthTrust's motion to compel responses to its discovery requests and neglected to attend the hearing on the motion. These failures prompted the court to deny Noles' motion to dismiss and grant Mountain's motion to compel. When SouthTrust later sought sanctions against Mountain, Noles failed to object to this motion as well. This time, the court ordered Mountain to pay $42,390.10 in attorney fees and costs. Mountain ultimately lost the case

when the court granted SouthTrust's motion for default judgment. The court based its ruling on what it claimed was Mountain's "dilatory" and "contumacious" failure to "respond to discovery and otherwise proceed with this case . . . ." Mountain was required to pay SouthTrust $452,531.34 pursuant to the default judgment.

## II. <u>STANDARD OF REVIEW</u>

When a defendant contests personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of showing that a basis for asserting jurisdiction exists. <u>See</u> <u>Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n</u>, 142 F.3d 26, 34 (1st Cir. 1998); <u>Rodriguez v. Fullerton Tires Corp.</u>, 115 F.3d 81, 83 (1st Cir. 1997). In a case such as this, in which no evidentiary hearing has been held, I hold the plaintiff to a prima facie standard. <u>See</u> <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995) (citing <u>United Elec. Radio and Mach. Workers of Am. (UE) v. 163 Pleasant St. Corp.</u>, 987 F.2d 39, 43 (1st Cir. 1993) [hereinafter <u>Pleasant St. II</u>]).

To make a prima facie showing of jurisdiction, a plaintiff may not rest on the pleadings. Rather, he or she must "adduce

evidence of specific facts" that support jurisdiction. Foster-Miller, 46 F.3d at 145; Pleasant St. II, 987 F.2d at 44. In conducting my analysis, I take the facts offered by the plaintiff as true and construe them in the light most favorable to the plaintiff's jurisdictional claim. See Mass. Sch. of Law, 142 F.3d at 34; Foster-Miller, 46 F.3d at 145. I do not act as a fact-finder; instead I determine "whether the facts duly proffered, [when] fully credited, support the exercise of personal jurisdiction." Rodriguez, 115 F.3d at 84 (citing Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992)).

While the prima facie standard is liberal, I need not "'credit conclusory allegations or draw farfetched inferences.'" Mass. Sch. of Law, 142 F.3d at 34 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)). I also consider facts offered by the defendant, but only to the extent that they are uncontradicted. See id.

When assessing personal jurisdiction in a diversity of citizenship case, the court "'is the functional equivalent of a state court sitting in the forum state.'" Sawtelle, 70 F.3d at 1387 (quoting Ticketmaster, 26 F.3d at 204). Accordingly, I must determine whether an exercise of jurisdiction is proper under

both the New Hampshire long-arm statute and the due process requirements of the federal constitution.  See id.; Foster-Miller, 46 F.3d at 144.  Because New Hampshire's long-arm statute is coextensive with the federal due process standard, however, I proceed directly to the constitutional due process analysis.  See Phelps v. Kingston, 130 N.H. 166, 171 (1987).

The due process clause precludes a court from asserting jurisdiction over a defendant unless "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  Because the constitutional inquiry is founded on "'traditional conception[s] of fair play and substantial justice,'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 464 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)) (alteration in original), determining personal jurisdiction has always been "more an art than a science," Ticketmaster, 26 F.3d at 206 (quoting Donatelli v. Nat'l Hockey League, 893 F.2d 459, 468 n.7 (1st Cir. 1990)).

The "constitutional touchstone" for personal jurisdiction is "whether the defendant purposefully established 'minimum

contacts' in the forum State." Burger King, 471 U.S. at 474 (citing Int'l Shoe, 326 U.S. at 316); see also Sawtelle, 70 F.3d at 1388. The inquiry into "minimum contacts" is necessarily fact-specific, "involving an individualized assessment and factual analysis of the precise mix of contacts that characterize each case." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994). A defendant cannot be subjected to a forum state's jurisdiction based solely on "random," "fortuitous," or "attenuated" contacts. Burger King, 471 U.S. at 475 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984); World-Wide Volkswagen, 444 U.S. at 299) (internal quotation marks omitted). Rather, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

A court may assert authority over a defendant by means of either general or specific jurisdiction. Mass. Sch. of Law, 142 F.3d at 34 (citing Donatelli, 893 F.2d at 462-63); Foster-Miller, 46 F.3d at 144. A defendant who has engaged in continuous and systematic activity in a forum is subject to general jurisdiction

in that forum with respect to all causes of action, even those unrelated to the defendant's forum-based activities. <u>Phillips Exeter Acad. v. Howard Phillips Fund, Inc.</u>, 196 F.3d 284, 288 (1st Cir. 1999) (citing <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984); <u>Donatelli</u>, 893 F.2d at 462-63). A court may exercise specific jurisdiction, by contrast, only when the cause of action arises from, or relates to, the defendant's contacts with the forum. <u>See</u> <u>id.</u>; <u>Pritzker</u>, 42 F.3d at 60.

### III. __ANALYSIS__

Mountain does not allege that Noles ever transacted business in New Hampshire other than in relation to his representation of Mountain's interests in the Alabama litigation. Therefore, Mountain must demonstrate that the court has specific personal jurisdiction to consider its claims against Noles.

The First Circuit has developed a three-part test for determining whether an exercise of specific jurisdiction is consistent with due process. The analysis consists of an inquiry into (1) relatedness, (2) purposeful availment (or "minimum

contacts"), and (3) reasonableness. See Mass. Sch. of Law, 142 F.3d at 35; Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712-13 (1st Cir. 1996), cert. denied, 520 U.S. 1155 (1997). An affirmative finding on each of these three components is required to support an assertion of specific jurisdiction. Phillips Exeter, 196 F.3d at 288.

I first focus on the relatedness prong of the three-part test. Under the relatedness requirement, I must determine whether the plaintiff's claims arise out of, or are related to, the defendant's contacts with the forum. See id.; Mass. Sch. of Law, 142 F.3d at 35. When, as in this case, the plaintiff asserts a tort claim, the proximate cause standard requires that the plaintiff demonstrate both "cause in fact (i.e., the injury would not have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)." Mass. Sch. of Law, 142 F.3d at 35 (internal quotation marks and citation omitted). For a contract claim, which Mountain also asserts, I must determine "whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." Phillips Exeter, 196 F.3d at 289.

-9-

Noles' visits to Mountain's New Hampshire office, and his transmission of information into New Hampshire by mail and telephone, constitute forum contacts for purposes of this analysis. Sawtelle, 70 F.3d at 1389-90 (citing Burger King, 471 U.S. at 476). However, these contacts were neither the factual nor the legal cause of the tort injuries for which Mountain seeks relief. Mountain does not allege that Noles' letters, telephone calls and emails contained faulty advice amounting to legal malpractice. Instead, it argues that Noles is at fault because he failed to produce discovery, failed to respond to pending motions and otherwise failed to diligently represent Mountain's interests in the Alabama litigation. Mountain's claimed injury thus arose not from Noles' contacts with New Hampshire, but from his failure to adequately represent Mountain's interests in Alabama.[3] Because Noles' visits, letters, telephone calls and emails to New Hampshire were neither a "but for" cause nor a

---

[3] Mountain asserts that Noles also failed to inform it of the adverse developments in the Alabama litigation. However, this alleged failure to communicate with Mountain was not a proximate cause of either the sanctions order or the default judgment. In any event, an alleged failure to communicate with a client located in New Hampshire is not a contact with the state sufficient to support personal jurisdiction.

-10-

legal cause of Mountain's injuries, they cannot serve as a basis for an assertion of personal jurisdiction over Mountain's tort claim.

Mountain's breach of contract claim fares no better. While Noles sent Mountain an engagement letter and Mountain presumably signed the letter in New Hampshire, "the mere existence of a contractual relationship between an out-of-state defendant and an in-state plaintiff does not suffice, in and of itself, to establish jurisdiction in the plaintiff's home state." Phillips Exeter, 196 F.3d at 290 (citing Burger King, 471 U.S. at 478-79). Instead, the First Circuit has characterized Supreme Court precedent as requiring a "contract plus" analysis in such cases. Ganis Corp. of California v. Jackson, 822 F.2d 194, 197 (1st Cir. 1987). As I have previously noted, Noles did not direct any communications into New Hampshire, such as advertisements or solicitations, that prompted Mountain to hire him. Instead, Mountain contacted him based on a recommendation from one of Noles' former classmates. Further, none of the emails, telephone calls, visits, or letters that Mountain cites, other than the engagement letter, were related either to the formation of the contract or its breach. Here, Noles' failure to perform

his contractual duties occurred entirely in Alabama. Therefore, Mountain has failed to establish a prima facie case of relatedness based upon its contract claim.

My analysis need go no further because all elements of the three-part test must be satisfied. However, I will address the purposeful availment factor to demonstrate that, even if Mountain's claims met the relatedness test, they nevertheless would fail for lack of purposeful availment. To evaluate whether Noles purposefully availed himself of the privilege of conducting business in New Hampshire, I consider "whether a defendant has 'engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable.'" Sawtelle, 70 F.3d at 1391 (citing Rush v. Savchuk, 444 U.S. 320, 329 (1980)). The primary factors I consider when making this determination are voluntariness and foreseeability. See id.

The facts and circumstances of this case closely resemble those considered by the First Circuit in Sawtelle. See id. at 1391-94. In Sawtelle, New Hampshire resident-plaintiffs argued that personal jurisdiction existed over Virginia and Florida law

firms and attorneys whom plaintiffs sued for malpractice.  See id. at 1386-87.  The defendants' New Hampshire contacts were limited, as here, to directing client communications into New Hampshire.  See id. at 1391.  The Sawtelle court concluded that, where a law firm's only substantial connection with a forum was its voluntary representation of an individual or corporation in litigation outside that forum, that connection is insufficient to support a finding of purposeful availment.  Id. (citing Austad Co. v. Pennie & Edmonds, 823 F.2d 223, 227 (8th Cir. 1987)).  Applying this logic, I conclude that Mountain has failed to demonstrate the requisite voluntariness on the part of Noles because Noles' only connection to New Hampshire was his representation of a New Hampshire corporation in litigation taking place in Alabama.  See id. at 1391-92; Austed, 823 F.2d at 226-27.

Because Mountain has failed to fulfill both the relatedness and purposeful availment components of the three-part test for specific jurisdiction, I need not address the test's third component.  Mountain has failed to make a prima facie showing of specific jurisdiction over Noles.

## IV. <u>CONCLUSION</u>

Noles' motion to dismiss for lack of personal jurisdiction (Doc. No. 4) is granted.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

January 9, 2002

cc:  Alexander J. Walker, Esq.
     Steven G. Noles, Esq.