## In re FIRST BANCORP DERIVATIVE LITIGATION.

### Civil No. 06–1064 (GAG).

United States District Court, D. Puerto Rico.

Nov. 30, 2006.

---

Jane A. Becker–Whitaker, Jane Becker Whitaker, PSC, San Juan, PR, Eric L. Zagar, Schiffrin & Barroway, LLP, William B. Federman, Federman & Sherwood, Oklahoma City, OK, Marc M. Umeda, Robbins Umeda & Fink LLP, San Diego, CA, Reynaldo Quinones–Souss, Hulsey Litigation Group, L.L.C., Charleston, SC, for Plaintiffs.

Ernesto F. Rodriguez–Suris, Ernesto F. Rodriguez Suris Law Office, Guaynabo, PR, Aimee D. Latimer, Bruce M. Bettigole, Heidi L. Steiber, Mayer Brown Rowe & Maw LLP, Washington, DC, Claudius O. Sokenu, Joseph De Simone, Mayer, Brown, Rowe & Maw LLP, New York, NY, Andres Guillemard–Noble, Nachman & Guillemard, San Juan, PR, Matthew T. McLaughlin, William D. McCracken, Venable LLP, New York, NY, Alberto J. Soler, Jonathan M. Hoff, Joshua R. Weiss, Cadwalader, Wickersham & Taft LLP New York, NY, Eric A. Tulla, Rivera Tulla & Ferrer, Hato Rey, PR, Matthew L. Mustokoff, Joseph S. Allerhand, Richard W.

Slack, Weil, Gotshal & Manges, LLP, New York City, for Defendants.

### *OPINION AND ORDER*

GELPI, District Judge.

Lead plaintiffs David Sanders, Carolyn Phillips, and Michael Elpern brought this shareholder derivative action on behalf of First BanCorp against certain current and former officers and directors of First BanCorp seeking to remedy defendants' violations of law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment. Defendants move to dismiss the plaintiffs' first amended verified shareholder derivative complaint pursuant to Fed.R.Civ.P. 23.1 and 12(b)(6). After reviewing the pleadings, the court **GRANTS** defendants' motions to dismiss (Docket Nos. 61, 63, 65).

## I. Relevant Factual Background As Alleged in the Complaint

### A. Parties

The lead plaintiffs in this derivative action have been shareholders of First Ban-Corp from at least January 1, 2000 through the present (the "relevant period"). *See* Docket No. 56 at ¶¶ 15–17.[1] Nominal defendant First BanCorp (the "Company") is a Puerto Rico corporation that operates as the holding company for FirstBank Puerto Rico, which provides various financial services in Puerto Rico, the U.S. Virgin Islands, and British Virgin Islands. *Id.* at ¶¶ 2, 18. The remaining defendants (the "individual defendants") are current and former officers and directors of the Company.

### 1. Aleman

Defendant Aurelio Aleman ("Aleman") has been a Member of the Company's Board of Directors, and the Company's Chief Operating Officer since September 2005. *Id.* at. ¶ 19. Previously, he served as the Company's Executive Vice President of Consumer Banking from 1998 to September 2005. *Id.*

### 2. Alvarez–Perez

Defendant Angel Alvarez–Perez ("Alvarez–Perez") was the Company's Chairman, President, and Chief Executive Officer at all relevant times. *Id.* at ¶ 20. On September 30, 2005, Alvarez–Perez stated that he would be resigning from the Company. *Id.*

### 3. Astor–Carbonell

Defendant Annie Astor–Carbonell ("Astor–Carbonell") was the Company's Senior Executive Vice President and Chief Financial Officer at all relevant times. *Id.* at ¶ 21. On September 30, 2005, Astor–Carbonell stated that she would be resigning from the Company. *Id.*

### 4. Alvarez–Bracero

Defendant Jose Julian Alvarez–Bracero ("Alvarez–Bracero") has served on the Company's Board of Directors since November 1996. *Id.* at ¶ 84. He is a member of the Audit Committee. *Id.*

### 5. Ferrer–Canals

Defendant Jose L. Ferrer–Canals ("Ferrer–Canals") has served on the Company's Board of Directors since 2001. *Id.* at ¶ 85. He is a member of the Audit Committee. *Id.*

---

[1] All citations to the Complaint refer to the First Amended Verified Shareholder Derivative Complaint filed on July 14, 2006. The paragraph numbering in the Complaint is non-sequential and in many instances, particular paragraph numbers are repeated within the document. To avoid confusion, the court adopts defendants' convention in which citations to paragraphs preceded by an asterisk indicate that the particular numbered paragraph being referenced is the second paragraph bearing that number in the Complaint.

#### 6. Battle

Defendant Fernando L. Battle ("Battle") was an Executive Vice President of the Company at all relevant times. *Id.* at ¶ 24.

#### 7. Cabrera–Marin

Defendant Luis Cabrera–Marin ("Cabrera–Marin") has been the Company's Interim Financial Officer since September 2005. *Id.* at ¶ 26. Previously, he served as the Company's Senior Vice President of the Investment and Treasury Department from May 1997 to September 2005. *Id.*

#### 8. Beauchamp

Defendant Luis M. Beauchamp ("Beauchamp") has been a Member of the Company's Board of Directors, and the Company's President and Chief Executive Officer since September 30, 2005. *Id.* at ¶ 91. As of February 16, 2006, Beauchamp has also served as Chairman of the Board. *Id.* Prior to September 30, 2005, he was the Company's Senior Executive Vice President for Wholesale Banking and Chief Lending Officer. *Id.*

#### 9. Diaz Irizarry

Defendant Jorge L. Diaz–Irizarry ("Diaz–Irizarry") has served on the Company's Board of Directors since 1999. *Id.* at ¶ 86.

#### 10. Menendez–Cortada

Defendant Jose Menendez–Cortada ("Menendez–Cortada") has served on the Company's Board of Directors since 2004. *Id.* at ¶ 87.

#### 11. Reiss Huyke

Defendant Richard Reiss–Huyke ("Reiss–Huyke") has served on the Company's Board of Directors since 2003. *Id.* at ¶ 88. He is a member of the Audit Committee. *Id.*

#### 12. Rivera

Defendant Randolfo Rivera ("Rivera") has served as Executive Vice President of the Company since 1998. *Id.* at ¶ 30.

#### 13. Rivera–Batista

Defendant Nayda Rivera–Batista ("Rivera–Batista") has served as Senior Vice President and General Auditor of the Company since 2002. *Id.* at ¶ 31.

#### 14. Teixidor–Mendez

Defendant Jose Teixidor–Mendez ("Teixidor–Mendez") has served on the Company's Board of Directors since 1994. *Id.* at ¶ 89.

#### 15. Umpierre–Catinchi

Defendant Sharee Ann Umpierre–Catinchi ("Umpierre–Catinchi") has served on the Company's Board of Directors since 2003. *Id.* at ¶ 90.

### B. Alleged Wrongdoing

During fiscal years 2001 through 2005, First BanCorp improperly classified mortgage transactions with Doral Financial Corp. ("Doral") and R & G Financial Corp. ("R & G") as sales from Doral and R & G to First BanCorp rather than commercial loans secured by mortgages from First BanCorp to Doral and R & G. *Id.* at ¶¶ 3, 11. This accounting error violated the Generally Accepted Accounting Principles ("GAAP"). *Id.* at ¶¶ 11, 67–70. It also caused the Company to materially inflate its financial results. *Id.* at ¶¶ 3, 11, *48. The misclassified mortgage transactions and the overstated financial results were incorporated in the Company's quarterly reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers and institutional investors. *Id.* at ¶ 34. When the falsity of the Company's financial statements was exposed to the market, the prices of the Company's securities fell dramatically. *Id.* at ¶¶ 3–6, 9–10, *49–60.

The individual defendants were responsible for maintaining and establishing adequate internal controls for the Company and to ensure that the Company's financial

statements were based on accurate financial information. *Id.* at ¶ 38. During fiscal years 2001 through 2005, the individual defendants caused or allowed the Company to file with the SEC misleading quarterly reports and to issue misleading press releases. *Id.* at ¶¶ 42–52, 54–62, *30–*47. Additionally, defendants Alvarez–Perez and Astor Carbonell signed various certifications attesting to the integrity of the Company's financial statements. *Id.* at ¶¶ 53, 61, *31, *33, *36, *39, *42, *45. Because of their positions within the Company and access to non-public material information, the individual defendants knew the statements contained in the quarterly reports and press releases were materially misleading. *Id.* at ¶ 34. They also had the power and authority to control the contents of the Company's quarterly reports and press releases. *Id.*

The individual defendants were unjustly enriched as a result of their breaches of fiduciary duties. *Id.* at ¶ 71. Based on the Company's materially misleading and inaccurate financial results for fiscal years 2000 through 2005, certain of the individual defendants received substantial cash bonuses and stock options: during the relevant period, Alvarez–Perez received $3,600,000.00 in cash bonuses and 555,000 stock options; Astor–Carbonell received $1,285,000.00 in cash bonuses and 111,000 stock options; Beauchamp received $1,510,000.00 in cash bonuses and 118,400 stock options; Aleman received $1,325,000.00 in cash bonuses and 111,000 stock options; Battle received $1,325,000.00 in cash bonuses and 111,000 stock options; and Rivera received $1,075,000.00 in cash bonuses and 85,000 stock options. *Id.* If the Company's financial results had been accurately recorded, the individual defendants' compensation would have been lower. *Id.* at ¶ 73.

Aside from this compensation, some of the individual defendants also benefitted financially during the relevant period through illegal insider stock sales: Astor–Carbonell sold 15,400 shares for $985,047.00; Diaz–Irizarry sold 4,900 shares for $122,549.00; Teixidor–Mendez sold 5,000 shares for $210,208.00; and Aleman sold 24,000 shares for $1,152, 431.00. *Id.* at ¶¶ 77–78.

### C. Derivative Claims

Plaintiffs brought derivative claims for: (1) breach of fiduciary duty against the individual defendants; (2) abuse of control against the individual defendants; (3) gross mismanagement against the individual defendants; (4) waste of corporate assets against the individual defendants; (5) unjust enrichment against the director defendants; (6) breach of fiduciary duties for insider selling and for misappropriation of information against defendants Astor–Carbonell, Diaz–Irizarry, and Teixidor–Mendez; and (7) reimbursement of compensation pursuant to Section 304 of Sarbanes–Oxley against defendants Alvarez–Perez and Astor–Carbonell.

### II. Standard of Review

When ruling on a motion to dismiss grounded on Rule 12(b)(6), the court will take the facts affirmatively alleged by plaintiff as true and construe the disputed facts in the light most favorable to the plaintiff without crediting conclusory allegations. *See Berezin v. Regency Savings Bank,* 234 F.3d 68, 70 (1st Cir.2000); *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 203 (1st Cir.1994). The court may grant dismissal only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his. claim which would entitle him to relief." *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Because this suit involves a federal shareholder derivative action, plaintiffs' complaint must meet the heightened pleading standards of Fed.R.Civ.P. 23.1. Rule 23.1 provides that a shareholder must plead with particularity either that demand was made on the corporation or that demand was futile. Fed.R.Civ.P. 23.1. Because First BanCorp is incorporated in Puerto Rico, the issue of whether demand upon First BanCorp would have been futile is controlled by Puerto Rican law. *Kamen v. Kemper Fin. Serv., Inc.,* 500 U.S. 90, 108–9, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). Puerto Rican law does not specifically elaborate the requirements of demand or when it is excused. *See Gonzalez Turul v. Rogatol Distributors, Inc.,* 951 F.2d 1, 3 n. 4 (1st Cir.1991). Because Puerto Rican corporate law was modeled after Delaware corporate law, the court turns to Delaware corporate law for the test of demand futility. *Id.*

Under Delaware law, inquiry into whether demand is excused proceeds under either *Aronson v. Lewis,* 473 A.2d 805 (Del.1984) or *Rales v. Blasband,* 634 A.2d 927 (Del.1993). Under the two-pronged *Aronson* test, demand will be excused if the derivative complaint pleads particularized facts creating a reasonable doubt that "(1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson,* 473 A.2d at 814. However, there are three circumstances in which the *Aronson* test will not be applied: "(1) where a business decision was made by the board of a company, but a majority of the directors making the decision have been replaced; (2) where the subject of the derivative suit is not a business decision of the board; and (3) where ... the decision being challenged was made by the board of a different corporation." *Rales,* 634 A.2d at 933–34. In those situations, demand is excused only where "particularized factual allega-

tions ... create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Id.* at 934. Because plaintiffs are not challenging a business decision of the First BanCorp Board, the *Rales* test applies to this case. In applying the *Rales* test, the court recognizes that the demand requirement of Rule 23.1 arises from the fundamental principle that the board of directors manages the business and affairs of a corporation, including decisions of whether to bring suit on behalf of the corporation. *See* 8 Del. C. § 141. To bring a derivative claim, a plaintiff "must overcome the powerful presumptions of the business judgment rule ..." *Rales,* 634 A.2d at 933. This rule is "a presumption that in making a business decision directors of corporation acted on an informed basis, in good faith and in honest belief that action taken was in best interests of company." *Aronson,* 473 A.2d at 812.

## III. Legal Analysis

Defendants moved to dismiss plaintiffs' complaint on the ground that plaintiffs failed to plead particularized facts excusing demand as required by Rule 23.1. In their complaint, plaintiffs alleged that demand would have been futile because the Board is incapable of making an independent and disinterested decision to bring this suit. *See* Docket No. 56 at ¶ 94.

### A. Directorial Interest

A director is considered interested "where he or she will receive a personal benefit from a transaction that is not equally shared by the stockholders." *Rales,* 634 A.2d at 936. Directorial interest also exists "where a corporate decision will have a materially detrimental impact on a

director, but not on the corporation and the stockholders." *Id.* In those instances, "a director cannot be expected to exercise his or her independent judgment without being influenced by the ... personal consequences resulting from the decision." *Id.* Plaintiffs argue that the board is interested because a majority of the directors faces a substantial likelihood of personal liability for abdicating their oversight duties to the company and because a majority of the directors engaged in insider trading.[2] The court will now examine the pleaded facts underlying these claims and whether they create a reasonable doubt that a majority of the Board is disinterested.

### 1. Oversight Claims

■■■ Demand may be excused for lack of board oversight if the complaint alleges sufficient facts to show that the defendant directors are potentially personally liable for the Company's violations of the law. *See Stone ex rel. AmSouth Bancorporation v. Ritter,* 2006 WL 3169168 at *8 (Del.2006). Under Delaware law, "only a sustained or systematic failure of the board to exercise oversight ... will establish the lack of good faith that is a necessary condition to liability." *In re Caremark International, Inc. Deriv. Litig.,* 698 A.2d 959, 971 (Del.Ch.1996). To state a claim for breach of the duty of oversight, a plaintiff must show that the directors either knew or should have known that violations of the law were occurring, that they took no steps in a good faith effort to

prevent or remedy that situation, and that such failure resulted in plaintiff's losses. *Id.* A claim for failure to exercise proper oversight is one of, if not the most, difficult theories upon which to prevail. *Id.* at 967. *See also Guttman v. Huang,* 823 A.2d 492, 505–06 (Del.Ch.2003). The *Caremark* decision premises liability on a showing that the directors were conscious of the fact that they were not doing their jobs. *Id.* at 506.

To show that the individual defendants may be potentially liable for the Company's violation of the law, plaintiffs alleged the following. The individual defendants were responsible for maintaining and establishing adequate internal controls for the Company and to ensure that the Company's financial statements were based on accurate financial information. *See* Docket No. 56 at ¶ 38. Specifically, defendants Alvarez–Bracero, Ferrer–Canals and Reiss–Huyke were members of the Audit Committee. *Id.* at ¶¶ 84, 85, 88. This Committee was in charge of reviewing the annual audited financial statements and quarterly financial statements. *Id.* at ¶ 94. Because of their positions within the Company and access to non-public material information, the individual defendants knew the statements contained in the quarterly reports and press releases were materially misleading. *Id.* at ¶ 34. Having the power and authority to control the contents of such reports and press releases, the individual defendants caused or allowed the company to file misleading fi-

**2.** Additionally, plaintiffs argue that demand should be excused because in order to bring this suit, a majority of the directors would be forced to sue themselves and expose their own misconduct. The court rejects this argument. It is well settled law that "the mere fact that directors would be asked to sue themselves is not a basis for excusing demand." *Kohls v. Duthie,* 791 A.2d 772, 779 (Del.Ch.2000) (citing *Aronson,* 473 A.2d at 815). Similarly, "an allegation that a majori-

ty of directors approved, participated or acquiesced in a challenged transaction will not, in and of itself, establish demand futility." *Grobow v. Perot,* 526 A.2d 914, 924 (Del.Ch. 1987) *aff'd,* 539 A.2d 180 (Del.1988). Alleging that the directors will face a large uninsured liability does not excuse demand either because the presence of an insurance policy exclusion does not establish interestedness or a lack of independence. *Caruana v. Saligman,* 1990 WL 212304 at *4 (Del.Ch.1990).

nancial reports and to issue misleading press releases. *Id.* at ¶¶ 34, 42–52, 54–62, *30–*47. When the falsity of the Company's financial statements was exposed to the market, the prices of the Company's securities fell dramatically. *Id.* at ¶¶ 3–6, 9–10, *49–60.

◼ Under Delaware law, these allegations are not enough to state a viable *Caremark* claim to excuse demand. See *Guttman*, 823 A.2d at 498; *Rattner v. Bidzos*, 2003 WL 22284323 at *13 (Del.Ch. 2003). In *Guttman*, plaintiffs brought a derivative action alleging, inter alias, that the directors failed to prevent accounting irregularities that caused the company to restate its financial statements. *Id.* at 493. To support this allegation, plaintiffs pled that the directors were in a position to know of the improper accounting practices engaged by the Company. *Id.* at 496–97. The directors filed a motion to dismiss for failure to make a demand on the board. *Id.* at 493. In dismissing plaintiffs' action, the court held that plaintiffs did not plead a viable *Caremark* claim to excuse demand. *Id.* at 507. The court noted that plaintiffs' complaint lacked "the kind of fact pleading that is critical to a *Caremark* claim, such as contentions that the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them, or even worse, to encourage their continuation." *Id.*

In *Rattner*, plaintiffs brought a derivative action alleging, inter alias, that the current directors and senior officers of the company breached their fiduciary duty of care by inadequately maintaining accounting controls and utilizing improper accounting and audit practices. *Rattner*, 2003 WL 22284323 at *13. To support this allegation, plaintiffs pled that the company utilized improper accounting practices in violation of GAAP and that because of defendants' failure to maintain and oversee these practices, the company issued numerous materially misleading financial statements. *Id.* at *2–3. The defendants moved to dismiss plaintiffs' complaint for failure to make a demand on the board. *Id.* at *1. Unable to conclude that a majority of the Board faces a likelihood of liability for oversight failure, the court held that demand was not excused. *Id.* at *13. The court found it relevant that the complaint lacked "particularized facts regarding the Company's internal financial controls ... notably the actions and practices of VeriSign's audit committee," including "whether the committee discussed and approved any of the allegedly improper accounting practices." *Id.* at *12 (quoting *Guttman*, 823 A.2d at 498). The court added that merely alleging "a reason why the Defendant Directors could somehow have been aware of the alleged misdoings still falls short of pleading with particularity facts that would excuse demand." *Rattner*, 2003 WL 22284323 at *13.

Plaintiffs' complaint in this case suffers from the same infirmities that doomed the complaints in *Guttman* and *Rattner*. Plaintiffs failed to allege any particularized facts that would have put the directors on "clear notice" of the accounting problems. *Guttman*, 823 A.2d at 507. Similarly, plaintiffs failed to plead with particularity "the actions and practices of the audit committee," including "whether the committee discussed and approved any of the allegedly improper accounting practices." *Rattner*, 2003 WL 22284323 at *12 (quoting *Guttman*, 823 A.2d at 498). Furthermore, plaintiffs' own factual allegations undermine the claim that the directors had "clear notice" of the accounting problems. Plaintiffs alleged that PricewaterhouseCoopers LLP issued a clean audit opinion for at least two of the Company's annual

Form 10–K filings with the SEC during the relevant period. *See* Docket No. 56 at ¶¶ 30, 41. Given that these opinions confirmed compliance with GAAP, the defendant directors had less reason to suspect that the SEC filings were deficient. Alleging that the individual defendants knew or should have known of the accounting irregularities because of their positions lacks the particularity required to excuse demand. *See Caviness v. Evans*, 229 F.R.D. 354, 359–60 (D.Mass.2005) (applying Delaware law and refusing to infer that director knew of improper accounting practices from plaintiff's pleading of the director's Audit Committee duties). For these reasons, the court concludes that plaintiffs' lack of oversight allegations do not create a reasonable doubt that a majority of the board is disinterested.

## 2. Insider Trading Claims

■■■■■ Alternatively, plaintiffs argue that the Board is interested because a majority of the directors engaged in insider trading. Demand may be excused for insider trading if a reasonable doubt exists that a majority of the board is incapable of exercising its disinterested business judgment in considering a demand to challenge the insider-trading transactions. See *Rattner*, 2003 WL 22284323 at *10–11. Plaintiffs' complaint alleged that the Board is currently composed of ten directors. *See* Docket No. 56 at ¶ 82. Only three directors (Diaz–Irizarry, Teixidor–Mendez, and Aleman) are alleged to have engaged in insider trading. *Id.* at ¶ 78. Because a majority of the directors are not alleged to have engaged in insider trading, the court finds that plaintiffs' insider trading allegations do not raise a reasonable doubt that the Board is incapable of being impartial in considering a demand to challenge the insider-trading transactions.

## B. Directorial Independence

■■■■■ A director is deemed independent if his or her "decision is based on the corporate merits before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816. Lack of independence can be shown when a plaintiff pleads facts that establish "that the directors are 'beholden' to [the controlling person] or so under their influence that their discretion would be sterilized." *Rales*, 634 A.2d at 936. Plaintiffs argue that a majority of the Board is not independent because many of the individual defendants have significant personal and business relationships, and because the defendant directors derive a substantial source of income from the Company. The court will now examine the pleaded facts underlying these claims and whether they create a reasonable doubt that a majority of the Board is independent.

## 1. Personal and Business Relationships

■■■■■ For a relationship "to render a director unable to consider demand ... [it] must be of a bias-producing nature. Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1050 (Del.2004). To determine whether social and business ties compromise director independence, the court must review the complaint to assess "whether it states with particularity facts indicating that a relationship ... is so close that the director's independence may *reasonably* be doubted." *Id.* at 1051 (emphasis in original). This doubt may arise "because of financial ties, familial affinity, a particularly close or intimate personal or business affinity or because of evidence that in the past the relationship cause the

director to act non-independent vis vis an interested director." *Id.*

To show that the defendant directors have debilitating conflicts of interest that prevent them from . being independent, plaintiffs alleged the following.

- Defendant Diaz–Irizarry and his father, Arturo Diaz, have substantial and publicly documented loan agreements with the First BanCorp that were approved by the Board and First BanCorp's executive officers. *See* Docket No. 56 at ¶ 94c.
- Defendants Aleman and Beauchamp are members of the Board of Directors of First Leasing and Rental Corporation, dba Money Express, and of First Bank Insurance Agency, Inc. *Id.* at ¶ 94d. Additionally, Aleman was Vice President of Chase Manhattan Bank, N.A. where Beauchamp worked as a Regional Manager. *Id.*
- Defendants Bracero, Diaz–Irizarry, and Teixidor–Mendez are members of the Puerto Rico Chamber of Commerce. *Id.* at ¶ 94e.
- Defendant Diaz–Irizarry is a member of the Association of General Contractors of Puerto Rico. *Id.* at ¶ 94f. Defendant Menendez–Cortada is counselor to the Board of Directors of the Association of General Contractors of Puerto Rico. *Id.*
- Defendant Menendez–Cortada is a director of The Luis A. Ferre Foundation, Inc., where defendant Teixidor–Mendez serves as a director. *Id.* at ¶ 94g.

 Under Delaware law, these allegations do not show that the business relationships between the defendant directors are of a bias-producing nature. *See Highland Legacy Ltd. v. Singer,* 2006 WL 741939 at *5 (Del.Ch.2006); *Jacobs v. Yang,* 2004 WL 1728521 at *5–6 (Del.Ch. 2004). In *Highland,* plaintiff in a derivative action sought to excuse demand by alleging that two directors were not independent of a third director because all three directors served together on a few boards of unaffiliated companies. *Highland,* 2006 WL 741939 at *5. The court rejected this argument and held that plaintiff did not allege facts sufficient to support a claim of non-independence to excuse demand. *Id.* In reaching this conclusion, the court noted that "the . naked assertion of a previous business relationship is not enough to overcome the presumption of a director's independence." *Id.* (quoting *Orman v. Cullman,* 794 A.2d 5, 27 (Del.Ch. 2002); *Beam,* 845 A.2d at 1050).

In *Jacobs,* director Bostock served on the boards of Yahoo! and Unicast, Inc. ("Unicast"). *Jacobs,* 2004 WL 1728521 at *5. Yahoo! and Unicast entered into an advertising agreement whereby Yahoo! paid Unicast $206,000.00. In a derivative action on behalf of Yahoo!, plaintiff sought to excuse demand by alleging, inter alias, that Bostock was not independent because of Bostock's position with Unicast and Unicast's dependence on Yahoo!. *Id.* The court found that this allegation does not raise a reasonable doubt that the business ties between Bostock and Unicast would prevent Bostock from considering a demand independently and "free from extraneous influences." *Id.* at *6. In reaching this conclusion, the court noted that plaintiff's complaint failed to establish that the other insider defendants exercise control over Yahoo!'s relationship with Unicast and that Unicast's business relationship with Yahoo! is material to Unicast. *Id.* The court pointed out that "the existence of contractual relationships with companies that directors are affiliated with potentially makes the board's decision more difficult, 'but it does not sterilize the board's ability to decide.' " *Id.* (quoting *Brehm v. Eisner,* 746 A.2d 244, 254 (Del.2000)).

Plaintiffs' business-relationships allegations in this case fail to create a reasonable

doubt of director independence for the same reasons that the allegations in *Highland* and *Jacobs* failed. Alleging that several directors work together outside the Company and/or serve together on a few boards of unaffiliated companies is not enough because "allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence." *Beam*, 845 A.2d at 1050. Similarly, alleging that Diaz–Irizarry and his father have substantial loan agreements with the Company is insufficient to create a reasonable doubt of director independence because plaintiffs have not established that the other directors exercise control over the loans or that the loans are material to Diaz–Irizarry's outside businesses. See *Jacobs*, 2004 WL 1728521 at *6. While the loans' existence may make the board's decision more difficult, the loans "do not sterilize the board's ability to decide." *Brehm v. Eisner*, 746 A.2d at 254. Accordingly, the court concludes that plaintiffs' business-relationships allegations do not create a reasonable doubt of director independence.

### 2. Director's Compensation

Alternatively, plaintiffs argue that the Board is not independent because the directors derive a substantial source of income from the Company. To support this claim, plaintiffs alleged the following. Defendant/director Beauchamp has been employed by the Company since at least 1997. *See* Docket No. 56 at ¶ 25. In 2004, he received a salary of $571,497.00, a cash bonus of $410,000.00, and 38,400 stock options. *Id.* at ¶ 71. Defendant/director Aleman has been employed by the Company since at least 1998. *Id.* at ¶ 19. In 2004, he received a salary of $444,343.00, a cash bonus of $400,000.00, and 36,000 stock options. *Id.* ¶ at 71. These allegations do not create a reasonable doubt of director

independence because "[a]llegations as to one's position as a director and the receipt of director's fees, without more ... are not enough for purposes of pleading demand futility." *In re Ltd., Inc. S'holders Litig.*, 2002 WL 537692 at *4 (Del.Ch.2002). The weakness in plaintiffs' argument is that they offer no relevant facts to support their claim of demand futility aside from the fact that the directors receive substantial remuneration for their service on the Company's board. *See Jacobs*, 2004 WL 1728521 at *4. Thus, the court concludes that plaintiffs' director-compensation allegations do not create a reasonable doubt of director independence.

### IV. Conclusion

For the foregoing reasons, plaintiffs have failed to raise a reasonable doubt that, at the time the complaint was filed, a majority of the Board was disinterested or independent. Because plaintiffs did not plead with particularity either that demand was made or that demand was futile, defendants' motions to dismiss (Docket Nos. 61, 63, 65) are **GRANTED** and plaintiffs' case is dismissed pursuant to Rule 23.1.

**SO ORDERED.**